UNITED STATES COURT OF APPEALS
SEVENTH CIRCUIT

GREG GILSINGER,
Appellant,

v.

CITIES AND VILLAGES MUTUAL INSURANCE COMPANY,
Appellee.

On Appeal from The United States District Court
for the Eastern District of Wisconsin
Hon. Judge J.P. Stadtmueller
Case No. 2:21-cv-00831-JPS

**REPLY BRIEF FOR APPELLANT**

Robert L. Sirianni, Jr., Esquire
*Counsel of Record*
BROWNSTONE, P.A.
P.O. Box 2047
Winter Park, Florida 32790-2047
Tel: 407-388-1900
robertsirianni@brownstonelaw.com
*Counsel for Appellant*

**ORAL ARGUMENT NOT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................. i

TABLE OF AUTHORITIES ..................................................................... ii

ARGUMENT ...........................................................................................1

    I.     The District Court Erred in Dismissing Gilsinger's Fourteenth Amendment Due Process Claim ...........................................................1

    II.    CVMIC Violated the First Amendment When It Fired Gilsinger for Engaging in Constitutionally Protected Activities...............................6

    III.   Gilsinger's Defamation Claim is Factually Supported and Improperly Dismissed ........................................................................................9

    IV.   CVMIC Intentionally Interfered with Gilsinger's Professional Relationships .......................................................................................10

V.    CVMIC Breached its Implied-in-Fact Contract with Gilsinger and the Covenant of Good Faith and Fair Dealing ...................................................13

VI.    Gilsinger Has Sufficiently Established His Promissory Estoppel Claim......15

CONCLUSION .......................................................................................17

# TABLE OF AUTHORITIES

## Cases

*145 Fisk, LLC v. Nicklas*, 986 F.3d 759 (7th Cir. 2021) ...........................................6

*Briesemeister v. Lehner*, 720 N.W.2d 531 (Wis. Ct. App. 2006)...........................10

*Buttitta v. City of Chicago*, 9 F.3d 1198 (7th Cir. 1993) ..........................................1

*Clay v. Horton Mfg. Co.*, 172 Wis. 2d 349 (Ct. App. 1992)...................................13

*Connick v. Myers*, 461 U.S. 138 (1983)...................................................................7

*Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901 (7th Cir. 2011) ................2

*Gazarkiewicz v. Town of Kingsford Heights*, 359 F.3d 933 (7th Cir. 2004) .............7

*Gilsinger v. Cities & Vills. Mut. Ins. Co.*, No. 21-CV-831-JPS, 2023 U.S. Dist. LEXIS 166124, 16 (E.D. Wis. Sep. 19, 2023) ......................................................2

*Hudson v. City of Chi.*, 374 F.3d 554 (7th Cir. 2004) ..............................................1

*Knauf Realty, LLC v. Prudential Real Est. Affiliates, Inc.*, 486 F. Supp. 2d 855 (W.D. Wis. 2007) .................................................................................................16

*Mach v. Allison*, 2003 WI App 11, 12, 259 Wis. 2d 686, 656 N.W.2d 766........9, 10

*Northgate Motors, Inc. v. General Motors Corp.*, 111 F. Supp. 2d 1071 (E.D. Wis. 2000)..................................................................................................15

*Palka v. Shelton*, 623 F.3d 447 (7th Cir. 2010) .......................................................1

*Phelan v. City of Chicago*, 347 F.3d 679 (7th Cir. 2003)........................................1

*Regents v. Roth*, 408 U.S. 564 (1972).....................................................................1

*Renken v. Gregory*, 541 F.3d 769 (7th Cir. 2008) ...................................................6

*RMS of Wis., Inc. v. S-K JV*, No. 13-CV-1071, 2016 U.S. Dist. LEXIS 75335 (E.D. Wis. 2016) ..............................................................15

*Spiegla v. Hull*, 481 F.3d 961 (7th Cir. 2007) ..........................................6

*U.S. Oil Co. v. Midwest Auto Care Services, Inc.*, 150 Wis. 2d 80, 440 N.W.2d 825 (Wis. 1997) ...............................................................16

*Wesbrook v. Ulrich*, 840 F.3d 388 (7th Cir. 2016) ...................................10

*Woodruff v. Mason*, 542 F.3d 545 (7th Cir. 2008)......................................6

*Woods v. Evansville Press Co.*, 791 F.2d 480 (7th Cir. 1986) .................9

## **Statutes**

Wis. Stat. § 66.0509(1m) ........................................................... 1, 2, 3, 4

## ARGUMENT

I. **The District Court Erred in Dismissing Gilsinger's Fourteenth Amendment Due Process Claim.**

Gilsinger has demonstrated "a legitimate claim of entitlement" to a hearing before an impartial officer prior to his termination. *Regents v. Roth*, 408 U.S. 564, 570 (1972). As a result, Gilsinger has established "1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Hudson v. City of Chi.*, 374 F.3d 554, 559 (7th Cir. 2004) (quoting *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir. 1993)).

### A. Gilsinger was a public employee and terminable only for cause.

Gilsinger may demonstrate "[a] property interest in continued employment . . . '1) by an independent source such as state law securing certain benefits; or 2) by a clearly implied promise of continued employment.'" *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010) (quoting *Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th Cir. 2003)). Here, Gilsinger has demonstrated a property interest via state law. Specifically, Wis. Stat. § 66.0509(1m)(d), clearly requires that public sector employees receive a hearing before an impartial hearing officer before they can be terminated.

Wisconsin state law provides that "[i]f a local governmental unit creates a grievance procedure under this subsection, the procedure shall contain at least all of the following elements:

1. A written document specifying the process that a grievant and an employer must follow.

2. A hearing before an impartial hearing officer.

3. An appeal process in which the highest level of appeal is the governing body of the local governmental unit.

Wis. Stat. § 66.0509(1m)(d). Here, the District Court determined that CVMIC is a local governmental unit. *Gilsinger v. Cities & Vills. Mut. Ins. Co.*, No. 21-CV-831-JPS, 2023 U.S. Dist. LEXIS 166124, 16 (E.D. Wis. Sep. 19, 2023). Therefore, the only question is whether CVMIC created a grievance procedure, to which the answer is undisputably yes. ECF No. 15 at 4. Since CVMIC created a grievance procedure, such procedure must provide Gilsinger with "[a] hearing before an impartial hearing officer." Wis. Stat. § 66.0509(1m)(d)(2). It is difficult to imagine a less "scramble[d]" analysis. ECF No. 15 at 16.

Since Gilsinger is a public employee that may only be terminated for cause, he is entitled to due process protections before being fired. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011). Despite CVMIC's contentions, the record is heavily disputed regarding whether CVMIC's employees are at-will. In fact, the record makes clear that CVMIC has a long-established policy that secures employees' interest in continued employment. Horner testified that he declined to fire one employee, Mary Strike, because he "didn't feel he had a basis for doing it."

(Horner Deposition, page 153, lines 18-20). CVMIC's Director of Human Resources, Jean Cole ("Cole"), similarly did not think there was justification to terminate Strike, and that [her termination] would be putting CVMIC at risk." (Cole Deposition, page 47, lines 20-22[1]). However, CVMIC conveniently focused only on the language of the employee manual. Such an argument is misguided because the CVMIC employee manual was drafted based on the false premise that CVMIC was a private company. Gilsinger never knew he was a government employee because CVMIC withheld his employment status from him. Additionally, the at-will disclaimers further demonstrate CVMIC's pattern of deception in claiming that Gilsinger was at-will yet employing a contrary practice of termination for cause all while ignoring statutorily required hearings. The employee manual should therefore not be controlling on the issue of whether CVMIC employees have a property interest in continued employment. Instead, the statute in combination with CVMIC's routine practice demonstrates Gilsinger's property interest in his continued employment.

---

[1] Notably, CVMIC's statement that – just as with the other witnesses who were deposed in this case, Cole's sworn testimony was that she never made such a statement – is patently false. Cole could not remember much of the history which led to the litigation see page 47-48 of Cole's deposition.

## B. CVMIC's appeal process failed to afford Gilsinger a due process opportunity to challenge his dismissal.

CVMIC's argument regarding its appeal process flies directly in the face of the legislative text. As demonstrated above, Wis. Stat. § 66.0509(1m)(d)(2) states that a local governmental unit's grievance procedure shall include "[a] hearing before an impartial hearing officer." However, CVMIC appears to argue that its procedures are arbitrarily sufficient despite the fact that it fails to meet the unambiguous requirements of the legislative text. CVMIC fails to acknowledge that the question is not whether "Gilsinger was afforded a thorough process," but whether the grievance procedure meets the statutory requirements of a grievance procedure under Wis. Stat. § 66.0509(1m)(d). If the statutory required hearing was provided to Gilsinger, it would have been to determine whether there was just cause for his termination, based on CVMIC's routine practice of terminating employees only on a for cause basis.

## C. Gilsinger produced sufficient evidence that CVMIC interfered with business relationships and his future employment opportunities.

Gilsinger sufficiently demonstrated that CVMIC interfered with the concrete prospective contract with Boyle and Equian. CVMIC's argument that the business relationship with Boyle and Equian "never rose above Gilsinger's wishful thinking," fails to address the evidence in the record. ECF No. 15 at 20. The record makes clear that Boyle told Gilsinger that he was "certain Equian will partner with QMCS." ECF

No. 76 at 127. Additionally, at no point did Gilsinger use proprietary information or CVMIC contracts. Such contracts were drafted by Ceman, before CVMIC's interference. (Gilsinger Deposition, page 98, lines 19-22).

With respect to Ceman and BBC the fact that CVMIC intentionally interfered with the relationship is essentially undisputed. Horner testified himself that his "concern was, is there a business relationship here?" Additionally, Horner testified that he "needed to know about the business relationship between Boyle and Gilsinger." Notably, Boyle's actions towards Gilsinger dramatically shifted after Boyle met with CVMIC. All of a sudden, the partnership with Equian and QMCS went from being a certainty to an impossibility. Similarly, regarding Gilsinger's relationship with Ceman, Ceman confirmed that performing work for both CVMIC and QMCS was not a problem. ECF No. 80 at 8. However, Ceman then contacted Gilsinger to tell him that Ceman would no longer do work for Gilsinger and QMCS, due to BBC's need to "preserve their relationship with CVMIC, and so providing legal services to [Gilsinger] at that point was problematic." *Id.* at 9.

CVMIC's depiction of what constitutes a prospective contract raises the bar so high that no business relationship could clear it absent a formal contract. However, it is hard to imagine a more concrete prospective contract than Boyle assuring Gilsinger that he was "certain Equian will partner with QMCS." ECF No.

76 at 127. Gilsinger has therefore produced sufficient evidence that CVMIC interfered with business relationships and his future employment opportunities.

## II. CVMIC Violated the First Amendment When It Fired Gilsinger for Engaging in Constitutionally Protected Activities.

Gilsinger established that "(1) [he] engaged in activity protected by the First Amendment, (2) [he] suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was . . . 'at least a motivating factor' in the Defendant['s] decision to take the retaliatory action." *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 766 (7th Cir. 2021) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)).

### A. Gilsinger engaged in protected speech.

Gilsinger engaged in activity protected by the First Amendment when he went to the CVMIC board, contending that the City of Green Bay, one of CVMIC's biggest members, was being mismanaged, resulting in the misappropriation of public funds. ECF No. 81 at 3; ECF No. 80 at 15-16. To prove that Gilsinger engaged in protected speech, Gilsinger must have "spoken in his capacity as a private citizen and not as an employee." *Renken v. Gregory*, 541 F.3d 769, 773 (7th Cir. 2008). Additionally, Gilsinger's speech must have "touched on a matter of public concern . . ." *Id.* (quoting *Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007)

### 1. Gilsinger spoke in his capacity as a private citizen.

Gilsinger was a public employee that made statements unrelated to his official duties. Voskuil made clear that "keeping Green Bay" was not a part of Gilsinger's job. ECF No. 82 at 30. Far from "textbook employee communication," the Green Bay account was unrelated to Gilsinger's job duties, making his commentary a matter of public concern. Far from "textbook employee communication," Gilsinger's concern was how the City of Green Bay would impact the public funds spent by other member municipalities both in terms of a smaller risk pool and a larger share of the administrative costs. ECF No. 80 at 16.

### 2. Gilsinger's speech touched a matter of public concern.

When considering "the content, form, and context" of Gilsinger's speech, it is clear that his concern over the potential misappropriation of public funds touched a matter of public concern. *Gazarkiewicz v. Town of Kingsford Heights*, 359 F.3d 933, 941 (7th Cir. 2004) (quoting *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)). The City of Green Bay, as one of CVMIC's biggest members, would impact the public funds spent by other member municipalities both in terms of a smaller risk pool and a larger share of the administrative costs. ECF No. 80 at 16.

CVMIC argues that "[t]he content of Gilsinger's speech was self-evidently the protection of CVMIC, not the public." ECF No. 15 at 24. However, CVMIC fails to recognize that employees may speak out about public and private concerns

concurrently and receive First Amendment protections. Gilsinger's speech regarding the City of Green Bay intended to protect public funds *and* protect CVMIC's interests. As a public entity, the best interests of CVMIC are also the best interests of other public entities, as the latter would be financially impacted if the former's ability to pay claims was negatively impacted. Gilsinger therefore spoke in his capacity as a private citizen on matters of public concern.

**B. Gilsinger established a prima facie case of causation as to his claimed deprivation.**

Gilsinger's protected speech was a substantial and motivating factor in CVMIC's adverse employment action. In fact, Voskuil testified her "gut" told her that Horner felt Gilsinger was going "behind [his] back." (Voskuil Deposition, page 109, lines 4-5). Additionally, after nearly twenty-two years of employment, Gilsinger was terminated after bringing his concerns of treatment of a City of Green Bay employee. ECF No. 80 at 4. Gilsinger's termination was disguised as the result of a reorganization plan, but just so happened to be the only employee whose position was eliminated during the supposed reorganization. ECF No. 74 at 2. This is further demonstrated by the fact that Gilsinger was the first employee to be laid off by CVMIC in the thirty-two years since its creation. ECF No. 80 at 5. When other CVMIC employees were at risk of being fired, they were awarded numerous procedural protections, including a last chance agreement. *Id. a*t 5-6. In fact, Cole didn't even think that an employee that violated eleven work rules provided a

sufficient basis to fire her. *Id.* at 6. However, Gilsinger was terminated. Gilsinger has therefore demonstrated that his speech caused the elimination of his position.

## III. Gilsinger's Defamation Claim is Factually Supported and Improperly Dismissed.

Gilsinger's defamation claim is based on two defamatory statements that were made by CVMIC employees after Gilsinger was fired. First, CVMIC employees told Glen Boyle that Gilsinger misappropriated CVMIC contracts. Boyle's testimony provides that Horner told him that Gilsinger was transferring contact information, contracts, pricing arrangements, or other data to his business account. ECF No. 54 at 8. Additionally, Boyle's testimony provides that he inferred that Gilsinger's use of Ceman was problematic. ECF No. 76 at 53-55. Second, CVMIC employees accused Rick Ceman of billing CVMIC for work he had done for QMCS.

Regarding the first defamatory statement, CVMIC argues that "Gilsinger cannot identify the speaker whom he accuses of defaming him, or the actual words used." ECF No. 15 at 27. However, such argument ignores that, while Horner did not explicitly say the word misappropriation, Horner told Boyle that Gilsinger misappropriated CVMIC contracts, and Boyle understood it as such. ECF No. 89 at 28-29. Additionally, even assuming *arguendo* that Gilsinger did not identify the speaker that defamed him, no such requirement exists. *See, e.g., Woods v. Evansville Press Co.*, 791 F.2d 480, 486 (7th Cir. 1986) ("An implied statement, just as a statement made in direct language, can be defamatory."); *Mach v. Allison*, 2003 WI

App 11, 12, 259 Wis. 2d 686, 656 N.W.2d 766) ("the subject of a defamation action need not be a direct affirmation, but may also be an implication."). Therefore, statements made by Horner, to Boyle, that Gilsinger misappropriated CVMIC contracts was a defamatory statement. The CVMIC employees told Glen Boyle that Gilsinger misappropriated CVMIC contracts.

The second defamatory statement, that CVMIC employees accused Rick Ceman of billing CVMIC for work he had done for QMCS, is based on admissible testimony from Ceman who witnessed the alleged defamatory statement. Gilsinger is therefore not merely speculating, but instead providing credible evidence that a false statement was made in an attempt to harm Gilsinger's reputation. Gilsinger's defamation claim is therefore factually supported and improperly dismissed.

## IV. CVMIC Intentionally Interfered with Gilsinger's Professional Relationships.

Gilsinger has demonstrated a "prospective contractual relationship" with both Boyle and Equian, and Ceman and BBC. *Wesbrook v. Ulrich*, 840 F.3d 388, 395 (7th Cir. 2016) (quoting *Briesemeister v. Lehner*, 720 N.W.2d 531, ¶ 48 (Wis. Ct. App. 2006)).

### A. Gilsinger demonstrated that CVMIC interfered with prospective contractual relationships between QMCS and Boyle and Equian.

CVMIC argues "that there was never any actual or prospective business relationship between QMCS and Equian." ECF No. 15 at 31. As previously

demonstrated, the record makes clear that Boyle told Gilsinger that he was "certain Equian will partner with QMCS." ECF No. 76 at 127. CVMIC argues that Gilsinger failed to demonstrate a "meeting of the minds," but merely demonstrated "wishful thinking." ECF No. 15 at 32. However, such a conclusion is at odds with the record. At the same time that CVMIC describes a meeting of the minds as "more than one mind," it ignores the fact that the "mind" Gilsinger is referring to is not his own, but Boyle's. It was Boyle, after all, that stated he was "certain Equian will partner with QMCS." ECF No. 76 at 127. Boyle also acknowledged that he discussed specifics, like fee arrangements between Equian and QMCS. (Boyle Deposition, page 81, lines 11-13). Boyle's testimony and statement to Gilsinger therefore demonstrates more than "[m]ere conversations about business prospects," but instead demonstrates a prospective business relationship. ECF No. 15 at 32.

With respect to CVMIC's intent to interfere with Gilsinger's prospective business relationship with Boyle and Equian, Horner testified himself that his "concern was, is there a business relationship here?" Additionally, Horner testified that he "needed to know about the business relationship between Boyle and Gilsinger." All of a sudden, after Boyle met with CVMIC, the partnership with Equian and QMCS went from being a certainty to an impossibility, the probable result of CVMIC's intentional interference with Gilsinger's relationship.

## B. Gilsinger demonstrated that CVMIC interfered with Gilsinger's business relationship between QMCS and Ceman and BBC.

Similar to Gilsinger's relationship with Boyle and Equian, Gilsinger's relationship with Ceman and BBC also abruptly ended as a result of CVMIC's intentional interference. Due to the fact that Ceman also worked on CVMIC matters, Gilsinger proactively confirmed that Ceman would be performing work for both CVMIC and QMCS, and that doing so would not breach any sort of ethical duties. ECF No. 80 at 8. Ceman confirmed that performing such work was not a problem. *Id.* However, Ceman then contacted Gilsinger to tell him that Ceman would no longer do work for Gilsinger and QMCS, due to BBC's need to "preserve their relationship with CVMIC, and so providing legal services to [Gilsinger] at that point was problematic." *Id.* at 9.

CVMIC argues that Gilsinger is merely speculating that CVMIC interfered with Gilsinger's business relationship. However, after Ceman confirmed that performing work for both CVMIC and QMCS was not a problem, Ceman no longer felt that BBC could perform work for QMCS without damaging its relationship with CVMIC. ECF No. 80 at 8-9. CVMIC attempts to disguise its interference as Ceman simply "not [being] interested in doing any additional work for Gilsinger . . . ." ECF No. 15 at 34. However, far from a lack of interest, Ceman was concerned that providing legal services to Gilsinger would be problematic. ECF No. 80 at 9. Attempting to describe Ceman's legal and business concerns as a mere lack of

interest is absurd. Gilsinger has therefore come forward with evidence, not speculation, argument, or conjecture.

## V. CVMIC Breached its Implied-in-Fact Contract with Gilsinger and the Covenant of Good Faith and Fair Dealing.

### A. CVMIC breached its implied-in-fact contract with Gilsinger when it denied him progressive discipline and an appeal hearing.

A company may abrogate employment at will through unwritten policies communicated through superiors. *See Clay v. Horton Mfg. Co.*, 172 Wis. 2d 349, 355 (Ct. App. 1992). CVMIC argues that "the language of the manual itself plainly disclaims that 'the Employee Manual does not create a contract between CVMIC and any of its employees.'" ECF No. 15 at 37 (quoting Joint Factual Statement p. 12). In redundant fashion, CVMIC states over and over that "CVMIC's manual has no language that abrogated Gilsinger's at-will employment." *Id.* at 38. Such argument continues to miss the point no matter how much it is stated.

Gilsinger does not dispute the language of the handbook but contends that company policy altered his employment status. Additionally, Gilsinger does not dispute the provisions of the last chance agreement but instead contends that the disclaimer is not conclusive on the issue. Such disclaimer is contrary to the actual intent of the document, which is to justify a termination for cause should a termination occur. Cole also told Gilsinger that "nobody is really at will anymore." ECF No. 89 at 5. Additionally, Cole acknowledged that CVMIC's uniform

procedures were not in writing. (Cole Deposition, page 24, lines 10-12). Gilsinger also provides testimony from Cole regarding an employee that was offered progressive discipline and a last chance agreement because Cole "didn't think there was enough there to fire her." ECF No. 76-3 at 37-38.

As the Court acknowledged in *Clay*, it is possible for CVMIC through its agents to modify an employment contract to include company policies notwithstanding the disclaimer. CVMIC acknowledges the Court's holding in *Clay* while, at the same time, attempts to undermine it. In *Clay*, the Court noted that while "the employe handbook contain[ed] a specific disclaimer that neither its policies and provisions nor any other communications . . . [was] part of the employment contract . . . *this disclaimer is not conclusive of this issue*." *Id.* at 355 (emphasis added). CVMIC attempts to construe that the disclaimer is conclusive on the issue in the absence of "repeated oral assurances." ECF No. 15 at 39. However, CVMIC's attempt to water down the Court's jurisprudence is improper. The Court made clear that a company, through its agents, may modify an employment contract to include company policies notwithstanding the disclaimer. *Clay*, 172 Wis. 2d at 355. Here, Gilsinger was denied progressive discipline and an appeal hearing, protections from Gilsinger's implied-in-fact contract that were undeniably breached.

**B. CVMIC breached its duty of good faith and fair dealing.**

CVMIC's failure to disclose that CVMIC was a government entity constituted a breach of good faith and fair dealing. CVMIC argues that "it is impossible for CVMIC to respond to that . . . argument because Gilsinger cites nothing in the record or in controlling law that establishes any duty, breach, or consequence of CVMIC's presentation of its corporate status."

However, it is undisputed that "Wisconsin implies a duty of good faith and fair dealing in every contract." *RMS of Wis., Inc. v. S-K JV*, No. 13-CV-1071, 2016 U.S. Dist. LEXIS 75335, 11 (E.D. Wis. 2016) (quoting *Northgate Motors, Inc. v. General Motors Corp.*, 111 F. Supp. 2d 1071, 1082 (E.D. Wis. 2000)). Additionally, it is impossible for Gilsinger to cite evidence of CVMIC's failure to disclose that it was a governmental entity. The evidence is the absence of CVMIC ever disclosing its governmental status. The consequence of CVMIC's breach of duty was that Gilsinger was unaware of his civil servant protections when he was hired, and that he was entitled to a statutory grievance procedure when he was fired. CVMIC therefore breached its duty of good faith and fair dealing.

**VI.** <u>**Gilsinger Has Sufficiently Established His Promissory Estoppel Claim.**</u>

Testimony from Human Resources Director Jean Cole is evidence of a promise. As demonstrated above, Cole told Gilsinger that "nobody is really at will anymore." ECF No. 89 at 5. Additionally, testimony from Cole regarding a former

employee provides that progressive discipline and a last chance agreement was offered because Cole "didn't think there was enough there to fire her." ECF No. 76-3 at 37-38. Such statements were of the nature that Cole "should reasonably have expected to induce either action or forbearance" by Gilsinger. *Knauf Realty, LLC v. Prudential Real Est. Affiliates, Inc.*, 486 F. Supp. 2d 855, 861 (W.D. Wis. 2007) (quoting *U.S. Oil Co. v. Midwest Auto Care Services, Inc.*, 150 Wis. 2d 80, 89, 440 N.W.2d 825, 828 (Ct. App. 1989)). Therefore, a reasonable person, in the position of Gilsinger, could interpret such statements to negate at-will employment.

CVMIC's argument that "[p]romises require a degree of specificity," fails to acknowledge that part of Cole's testimony was in specific discussion over a specific employee with, in Cole's mind, insufficient cause to be fired. This statement allows Gilsinger to infer both his employment status was not at-will and would be offered progressive discipline protections and an appeal hearing. Cole is the Human Resources Director at CVMIC. CVMIC's argument allows executive employees to make promises to their employees regarding employment status and termination procedures, but then escape liability. This is especially true where, as in this case, there is no written disciplinary procedure. (Cole Deposition, page 24, lines 10-12). Such argument undermines the doctrine of promissory estoppel and deprives Gilsinger of his ability to reasonably rely on statements from CVMIC's senior executives. Just as it is possible for a company through the practices of its Human

Resources Director to modify an implied-in-fact employment contract to include company policies notwithstanding the disclaimer, it is possible (and reasonable) for employees to rely on the modifications.

It is also important to note CVMIC is relying on an employee manual that was drafted for a private company that CVMIC intentionally and falsely claimed to be. If CVMIC provided the statutorily required hearing, under Wis. Stat. § 66.0509(1m)(d), Gilsinger would have had a hearing on whether there was just cause for his termination, based on CVMIC's routine practice of terminating employees only on a for cause basis. Gilsinger has therefore sufficiently established his promissory estoppel claim.

## CONCLUSION

For the foregoing reasons, Gilsinger respectfully requests that this Court reverse the District Court's grant of summary judgment.

Respectfully Submitted,

*/s/ Robert L. Sirianni, Jr.*
Robert L. Sirianni, Jr.
Brownstone, P.A.
PO BOX 2047
Winter Park, FL 32790
O: 407-388-1900
robertsirianni@brownstonelaw.com
Counsel for Appellant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of February 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

Jasmine M. Baynard, Esquire
Joseph M. Wirth, Esquire
WIRTH + BAYNARD
9898 W. Bluemound Road, Suite 2
Wauwatosa, WI 53226
Tel: (414)291-7979
Fax (414)291-7960
Email: jmw.wbattys.com

*/s/ Robert L. Sirianni, Jr.*
Robert L. Sirianni, Jr., Esquire


## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Appellant's brief contains 3870 words, excluding those items enumerated in Fed. R. App. P. 32(f) and 7th Cir. R. 32(f). The foregoing was prepared using Microsoft Word in 14-point Times New Roman, as allowed by Fed. R. App. P. 32(a)(5)(A).

*/s/ Robert L. Sirianni, Jr.*
Robert L. Sirianni, Jr., Esquire